# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

MATT G. PRINES,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

Case No. 2:16-cv-01457-JCM-BNW

**REPORT AND RECOMMENDATION**

The case involves review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff Matt G. Prines' ("Plaintiff's") application for disability insurance benefits under Titles II and XVI of the Social Security Act. The court reviewed Plaintiff's Motion for Reversal and/or Remand (ECF No. 27), filed April 17, 2017, and Defendant's Cross Motion to Affirm (ECF Nos. 31, 32), filed June 16, 2017. Plaintiff did not file a reply. This matter was referred to the undersigned magistrate judge on May 2, 2019 for a report of findings and recommendations under 28 U.S.C. § 636(b)(1)(B)-(C) and Local Rule IB 1-4.

**I.    BACKGROUND**

    **A.    Procedural History**

On January 30, 2013, Plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, alleging an onset date of April 1, 2012. AR[1] 311-314, 315-323. The Commissioner denied Plaintiff's claims by initial determination on July 29, 2013. AR 212-217. Plaintiff requested reconsideration, which the Commissioner denied on

---

[1] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 18).)

January 17, 2014. AR 222-227, 228-233. A hearing was then held before an Administrative Law Judge (ALJ) on February 6, 2015, which was continued because Plaintiff had recently obtained counsel. AR 46-68. On November 2, 2015, a supplemental hearing was held. AR 69-153. On November 30, 2015, Plaintiff amended his alleged onset date to March 30, 2015 in a post-hearing brief. AR 430. On December 24, 2015, the ALJ issued a decision finding Plaintiff was not disabled. AR 16-45. On February 9, 2016, Plaintiff requested that the Appeals Council review the ALJ's decision. AR 12-14. The Appeals Council denied this request on April 22, 2016, making the ALJ's decision the final decision of the Commissioner. AR 1-4. On June 21, 2016, Plaintiff commenced this action for judicial review under 42 U.S.C. §§ 405(g). (*See* IFP App. (ECF No. 1).)

**B.     The ALJ Decision**

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920.

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since April 1, 2012. AR 21.

At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, seizures, neuropathy, chest pain, and lumbar disc bulging and facet disease. *Id.*

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R., Part 404, Subpt. P, App. 1 (the listings). AR 23.

Next, the ALJ found Plaintiff retained the residual functional capacity (RFC) to perform medium work with some exceptions. AR 24. Specifically, the ALJ found that Plaintiff could perform medium work as follows: Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently; stand and walk six hours per day; sit six hours per day subject to a sit/stand option once per hour for one minute at a time and without leaving the workstation. He was limited to occasional climbing of ramps and stairs and never climbing ladders, ropes, or scaffolds. He was capable of occasional balancing, stooping, crouching, kneeling, and crawling. He would have manipulative limitations of reaching, handling, and fingering frequently bilaterally. There

were no limitations with communications of seeing, hearing, and speaking. Environmentally, the ALJ found Plaintiff must avoid concentrations of heat, cold, and vibrations. Plaintiff would miss less than one day of work per month. Mentally, the claimant's drug and alcohol abuse was not material. Plaintiff had no limitations for understanding, remembering, and carrying out short, simple instructions; making judgments on simple work-related decisions; interacting appropriately with supervisors; and responding appropriately to work pressures and changes in the workplace. Plaintiff had slight limitations for understanding, remembering, and carrying out detailed instructions; interacting appropriately with the public; and interacting appropriately with co-workers. The ALJ defined a "slight" limitation as affecting less than ten percent of each workday. *Id.* The ALJ also evaluated Plaintiff's statements about the allegedly disabling nature of his impairments and found that they were not entirely credible. AR 25.

At step four, the ALJ found that Plaintiff had no past relevant work. AR 36.

At step five, and with the assistance of the vocational expert, the ALJ found that there were jobs existing in significant numbers that someone with Plaintiff's vocational profile could perform. AR 36-37. The ALJ therefore found Plaintiff "not disabled" as defined in the Act. AR 37.

**II.    DISCUSSION**

**A.    Standard of Review**

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides.

42 U.S.C. § 405(g). The court may enter "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The Ninth Circuit reviews a decision

affirming, modifying, or reversing a decision of the Commissioner de novo. *See Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are insufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based . . . ." *Id.*

(citing *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975).).

**B. Disability Evaluation Process**

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See generally* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity (SGA). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of "not disabled" is made. *See Barnhart*, 540 U.S. at 24. If the individual is not engaged in SGA, then the analysis proceeds to step two. *See id.* Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits his from performing basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); SSR 85-28, 1985 WL

56856 (Jan. 1, 1985).[2] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of "not disabled" is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairment or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity (RFC), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p, 1996 WL 374184 (July 2, 1996). In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a*); see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527, 416.927.

---

[2] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference if they are consistent with the Social Security Act and regulations. *Id.* at 1223-24 (finding ALJ erred in disregarding SSR 82-41).

Step four requires the ALJ to determine whether the individual has the RFC to perform his past relevant work (PRW). *See* 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. *See* 20 C.F.R. §§ 404.1560(b), 404.1565(a). In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. *Id.* §§ 404.1560(b), 404.1565(a). If the individual has the RFC to perform his past work, then a finding of "not disabled" is made. *Id.* § 404.1560(b)(3). If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she can do other work, then a finding of "not disabled" is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

**C.     Analysis**

    **1.     Medical Opinion Evidence – Dr. Zdorovyak**

        **i.     Dr. Zdorovyak's Opinion**

Plaintiff faults the ALJ for rejecting Dr. Zdorovyak's opinion that Plaintiff was unable to "hold down meaningful employment." (ECF No. at 27 at 6-9.) Dr. Zdorovyak was Plaintiff's primary care physician (i.e. a treating physician). *See* AR 33. At issue here is Dr. Zdorovyak's written statement from October 2015, which is difficult to read but appears to say, "Mr. Prines is a 29-year-old male. He has insulin dependent diabetes that is uncontrolled. It is complicated by frequent hospitalizations. Also, Mr. Prines has psychiatric disorder complicated by E to H/drug abuse. He is not able to hold down meaningful employment." AR 2472.

        **ii.     The ALJ's Decision**

The ALJ gave Dr. Zdorovyak's opinion the "greatest weight." AR 33. Regarding Dr.

Zdorovyak's statement that Plaintiff was unable to work, the ALJ found that it was "premised on the claimant's substance abuse and, based on Dr. Zdorovyak's multiple other statements in the record, it is reasonable to further conclude that the assertion relies on the claimant's noncompliance with diabetes treatment as well." AR 34. Plaintiff now asserts that "the ALJ's articulations do not fully take into account the nature of [Plaintiff's] mental impairments." (ECF No. 27 at 7.) In other words, Plaintiff faults the ALJ for not considering Dr. Zdorovyak's opinion that Plaintiff could not work, in part, because of a psychiatric disorder. (*See id.*)

### iii. When a Doctor's Opinion May Be Rejected

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss,* 427 F.3d at 1216. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.*

However, the regulations provide that a statement by a medical source that a Plaintiff is "unable to work" is not a medical opinion and is not due "any special significance" because the legal conclusion of disability is reserved to the Commissioner. 20 C.F.R. § 404.1527(d) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . ."); 20 C.F.R. § 416.927(d). The legal conclusion of disability is reserved exclusively to the Commissioner. *See* 20 C.F.R. § 404.1527(d); *see also McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."). Nevertheless, the ALJ is required to "carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *2 (July 2, 1996); *Holohan v. Massanari,* 246 F.3d 1195, 1203 (9th Cir. 2001) ("If the treating physician's opinion on the issue of disability is controverted, the ALJ must still provide 'specific and legitimate' reasons in order to reject the treating physician's opinion.").

### iv. Whether the ALJ Erred in Rejecting Dr. Zdorovyak's Opinion

Dr. Zdorovyak opined that Plaintiff "has insulin dependent diabetes that is uncontrolled . . . Also, Mr. Prines has psychiatric disorder complicated by E to H/drug abuse. He is not able to hold down meaningful employment." AR 2472. The ALJ considered Dr. Zdorovyak's opinion that Plaintiff could not work in light of Plaintiff's uncontrolled diabetes and history of drug abuse only; the ALJ did not consider Mr. Zdorovyak's statement in light of Plaintiff's alleged psychiatric disorder. *See* AR 34 (statement about Plaintiff being unable to hold down meaningful employment was "premised on the claimant's substance abuse and . . . noncompliance with diabetes treatment . . . ."). While the ALJ was not required to accept Dr. Zdorovyak's ultimate conclusion that Plaintiff could not work, in part, because of his alleged psychiatric disorder, he was required to "carefully consider" it, even though it was an "opinion about [an] issue[] that [is] reserved to the Commissioner." *See* Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *2 (July 2, 1996). Accordingly, the ALJ erred in not considering Dr. Zdorovyak's opinion that Plaintiff could not work, in part, because of his alleged psychiatric disorder.

This error, however, was harmless. Elsewhere in the ALJ's decision, he repeatedly considered Plaintiff's mental health and concluded that any alleged psychiatric disorders were not disabling. *See* AR 19-37. For example, the ALJ considered examining psychologist, Dr. Yao's, opinion and gave it significant weight. AR 35. Dr. Yao's report provided that: Plaintiff could understand, remember, carry out, and maintain attention and concentration for detailed and simple instructions; Plaintiff could interact appropriately with supervisors, coworkers, and the general public; Plaintiff was pleasant with the examiner and had normal thought processes; Plaintiff denied hallucinations; and Plaintiff was only diagnosed with pain disorder and cannabis and alcohol abuse. AR 33, 35; Ex. 10F. Dr. Yao did not opine that Plaintiff was unable to work. *See* Ex. 10F.

The ALJ also considered and gave some weight to the state agency psychological consultants' opinions. AR 34-35. These consultants opined that Plaintiff's mental impairments were nonsevere and found Plaintiff was not restricted in any aspects of daily living or social

functioning. AR 34, 174, 204. They also found that Plaintiff had mild difficulties in terms of maintaining concentration, persistence, and pace. AR 34-35, 174, 204. They found that Plaintiff had no extended periods of decompensation. AR 35, 174, 204.

The ALJ also considered Plaintiff's alleged history of hallucinations. AR 26. The ALJ noted, however, that when Plaintiff was treated for his hallucinations, medicine completely resolved his symptoms. *Id.*; Ex. 32F.

The ALJ also considered whether Plaintiff's mental impairments, considered alone or in combination, were severe at step two of his analysis and concluded that they were not. AR 22. The ALJ's determination was based on his findings in the following four functional areas. *Id.* First, Plaintiff had no limitations in activities of daily living. *Id.* Plaintiff could perform activities independently, including personal care, preparing simple meals, using public transportation, using a cell phone, using food stamps, and doing household chores. *Id.* (citing Testimony; Exs. 35F/75-76; 41F/28-29; 46F/17-18; 10F/5; 7E). Second, Plaintiff had only mild limitations in social function. AR 22. Plaintiff denied problems getting along with family, friends, and neighbors; reported getting along "ok" with authority figures; and interacted appropriately with examiners. *Id.* (citing Exs. 7E; 32F/4; 10F; 23F). Third, Plaintiff had only mild limitations with concentration, persistence, and pace. AR 22. Plaintiff had no trouble following along with questions at the hearing; and with treatment, Plaintiff had above average intelligence and normal ability for memory and concentration-tasks. *Id.* (citing Ex. 32F/4). Fourth, Plaintiff had no episodes of decompensation of an extended duration. AR 22.

Accordingly, while the ALJ erred by not specifically considering Dr. Zdorovyak's opinion that Plaintiff could not work, in part, because of a psychiatric illness, this error was harmless. The ALJ carefully considered Plaintiff's mental health and whether any mental health conditions were disabling. AR 19-37. He concluded that they were not, and this conclusion was supported by substantial evidence (as discussed *supra*).

Plaintiff's argument that the record shows that Plaintiff suffers from schizophrenia does not change the analysis. (*See* ECF No. 27 at 7.) While the record does repeatedly indicate that Plaintiff *may* have schizophrenia or schizoaffective disorder (*see, e.g.,* AR 740, 742, 1308, 1322,

1413, 1663, 1704, 1721, 2395, 2467), it does not indicate that this alleged condition is disabling. *See Young v. Sullivan*, 911 F. 2d 180, 183 (9th Cir. 1990) (diagnosis of an impairment alone is not sufficient to find plaintiff disabled). Rather, as discussed above, there is substantial evidence in the record that Plaintiff does not have a mental health condition that disables him from working. *See supra*.

Plaintiff's argument that non-adherence to medication and substance abuse may be associated with schizophrenia also does not change the analysis. (*See* ECF No. 27 at 7-9.) As an initial matter, Plaintiff's argument is hard to follow and somewhat inconsistent (noting first that "[n]onadhearance to medication and substance use *is* a known problem in the treatment of schizophrenia" but then noting twice that noncompliance and drug abuse only "*may* be" associated with schizophrenia). (*See id.* at 7-8, 9 (emphasis added).) To the extent Plaintiff's point is that his mental health "complicate[s] his overall condition" (*id.* at 9), substantial evidence exists that Plaintiff's mental impairments, considered alone or in combination, are not severe.³ *See* AR 22-23. To the extent Plaintiff is attempting to argue that Plaintiff's alleged schizophrenia or schizoaffective disorder *causes* him to be unable to take his medications regularly or abstain from substance abuse, Plaintiff has (1) not stated this and (2) not cited any evidence from a medical provider clearly stating this. (*See* ECF No. 27 at 6-9.) Moreover, Dr. Zdorovyak's opinion does not support that conclusion. *See* AR 2472. She only opined that Plaintiff "has [a] psychiatric disorder complicated by E to H/drug abuse." *Id.* She did not opine that Plaintiff's psychiatric disorder *causes* Plaintiff to be unable to abstain from illegal drugs (or to take his medications regularly). *See id.*

Accordingly, the ALJ committed harmless error in failing to consider Dr. Zdorovyak's opinion that Plaintiff could not work, in part, because of his psychiatric disorder.

---

³ Plaintiff states in one sentence that he "takes issue with the ALJ's finding that [his] mental impairments are non-severe." (ECF No. 27 at 9.) This is insufficient to preserve any argument challenging the ALJ's finding that Plaintiff's mental health impairments are non-severe. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (recognizing the court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

### 2. Medical Opinion Evidence – Dr. Jahnke

#### i. Dr. Jahnke's Opinion

Plaintiff faults the ALJ for rejecting Dr. Jahnke's opinion that Plaintiff would have difficulty working full time. (ECF No. at 27 at 9-13.) Dr. Jahnke was a medical expert who testified at the hearing. AR 34, 94-124. At issue is Dr. Jahnke's statement that "because diabetes is difficult to control and I think his psychiatric and cognitive abilities make it even harder and that have [sic] difficulty working full-time, eight hours a day, 40 hours a week, having the endurance to do that." AR 123.

#### ii. The ALJ's Decision

The ALJ gave Dr. Jahnke's opinion "some weight." AR 34.

As an initial matter, the ALJ wrote that Dr. Jahnke stated that Plaintiff would have difficulty working full time "due to difficult to control diabetes, neuropathy, and fatigue." *Id.* This is an incorrect summary of Dr. Jahnke's testimony, as she stated that Plaintiff would have difficulty working full-time "because diabetes is difficult to control and I think his psychiatric and cognitive abilities make it even harder . . . ." *See* AR 123.

Plaintiff, however, does not address this inaccurate summary. Instead, Plaintiff argues that the ALJ erred in rejecting Dr. Jahnke's testimony that it would be difficult for Plaintiff to work full time. (*See* ECF No. 27 at 10.)

#### iii. When a Doctor's Opinion May Be Rejected

An ALJ may reject a non-examining physician's opinion by reference to specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

However, as stated above, a statement by medical providers that a plaintiff "cannot work" is not a medical opinion and is not due "any special significance." 20 C.F.R. § 404.1527(d). The legal conclusion of disability is reserved exclusively to the Commissioner. *See id.* Still, the ALJ is required to "carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *2 (July 2, 1996); *Holohan,* 246 F.3d at 1203.

### iv. Whether the ALJ Erred in Rejecting Dr. Jahnke's Opinion

Dr. Jahnke opined that Plaintiff would have difficulty working full-time "because diabetes is difficult to control and I think his psychiatric and cognitive abilities make it even harder . . . ." AR 123. As noted above, the ALJ incorrectly summarized the reasons Dr. Jahnke thought it would be difficult for Plaintiff to work full time. *See* AR 34. Further, though it is clear from the ALJ's "not disabled" finding that he rejected Dr. Jahnke's conclusion, it is not clear from his decision why he rejected it. *See id.* In other words, it is unclear from the ALJ's discussion of Dr. Jahnke's opinion whether the ALJ did not agree that (1) Plaintiff had a hard time controlling his diabetes, (2) Plaintiff's psychiatric and cognitive abilities made it harder to control his diabetes, or (3) both; or whether the ALJ agreed that Plaintiff had a hard time controlling his diabetes and that this was made harder by his psychiatric and cognitive abilities but simply disagreed with Dr. Jahnke's conclusion that this would make it hard for Plaintiff to work full time. *See id.* Accordingly, the ALJ erred in incorrectly summarizing Dr. Jahnke's opinion, not referencing specific evidence in the medical record to reject Dr. Jahnke's opinion,[4] and not explaining why he rejected this opinion. *See Sousa*, 143 F.3d at 1244 (ALJ must reference specific evidence in medical record to reject non-examining doctor's medical opinion); *Lewin*, 654 F.2d at 634 (ALJ must explain what portions of the evidence are accepted and rejected); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

These errors, however, were harmless. As discussed below, elsewhere in the ALJ's opinion he found Plaintiff's diabetes was not hard to control (Plaintiff just failed to control it), and Plaintiff's mental impairments were not severe. Accordingly, the ALJ did "carefully consider" both premises of Dr. Jahnke's opinion (that Plaintiff had difficult to control diabetes

---

[4] The ALJ referenced specific evidence in the medical record to explain why he gave Dr. Zdorovyak's opinion more weight than Dr. Jahnke's. AR 34. But these references did not explain why the ALJ rejected Dr. Jahnke's opinion regarding Plaintiff's inability to work due to hard-to-control diabetes (allegedly made harder by psychiatric and cognitive conditions). *See id.*

and that this was made harder by Plaintiff's mental impairment). *See* Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *2 (July 2, 1996); *Holohan,* 246 F.3d at 1203.

Regarding Plaintiff's diabetes, the ALJ found that Plaintiff was almost always non-compliant with medication, but that when he received medication (e.g., in the hospital), it was effective at controlling his diabetes. *See* AR 30. Dr. Jahnke herself even testified at the hearing that in almost every treatment and hospitalization record for diabetic ketoacidosis or low blood sugar, Plaintiff was non-compliant with insulin or diet. AR 104. After hearing Dr. Jahnke's testimony and carefully considering the medical evidence in the record,[5] the ALJ concluded that "claimant's improvement, consistently shown with administration of medications, suggests that the claimant's medications would be effective if he were compliant." AR 26. This is a clear rejection, supported by substantial evidence, of Dr. Jahnke's opinion that Plaintiff's diabetes was hard to control.

Additionally, as discussed above, the ALJ repeatedly considered Plaintiff's mental health and potential mental impairments and found that Plaintiff did not have any severe mental or cognitive impairments. *See supra.* As is particularly relevant here, the ALJ found that Plaintiff's "medically determinable mental impairments . . . do not cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." AR

---

[5] The ALJ discussed the medical evidence related to Plaintiff's diabetes in the following places: AR 26 (medical record notes that Plaintiff had elevated glucose levels, which were treated appropriately with insulin (citing Ex. 32F/1, 13)); AR 26 (same (citing Ex. 34F/63-64)); AR 26-27 (primary care record notes that Plaintiff's diabetes is uncontrolled because of inappropriate dosing (citing Exs. 46F/30-31; 28F)); AR 27-28 (medical record noting that Plaintiff's diabetes is poorly controlled due to noncompliance with outpatient medications (citing Ex. 36F/20)); AR 28 (emergency room medical records indicate that Plaintiff was admitted for uncontrolled blood sugar levels because Plaintiff was noncompliant with diabetic medications (citing Ex. 41/35-42, 59)); AR 28-29 (medical record indicates Plaintiff's blood sugar is high; Plaintiff was not taking medications properly (citing Ex. 46F/17-20)); AR 29 (podiatrist noted "terrible" control of diabetes and noncompliance with treatment (citing Ex. 46F/15-16)); AR 30 (Plaintiff noncompliant with treatment but when he receives treatment, condition improves (citing Ex. 48F/3)); AR 31 (blood sugar high because he was out of medicine for a week (citing Ex. 30F/28-33)); AR 31 (blood sugar high due to noncompliance; brought under control with treatment (citing Exs. 30F/14-20, 21-27, 35-37; 4F/2-6)); *see also* AR 31-32, 33-34 (discussing noncompliance with insulin (citing Exs. 30F/5-6, 10-11; 14F/22; 8F; 46F/25)).

22. The ALJ also found that Plaintiff is "capable of performing activities independently, including personal care . . . ." *Id.*

Accordingly, while the ALJ should have explained why he rejected Dr. Jahnke's opinion that Plaintiff's diabetes and mental impairments would make it difficult for him to work full time, failing to do so was harmless error. The ALJ clearly considered the severity of Plaintiff's diabetes and mental impairments and concluded that (1) Plaintiff's diabetes was responsive to treatment; Plaintiff was simply often non-compliant with his medications; and (2) Plaintiff did not have any severe mental impairments and could perform his own personal care. *See* AR 22, 26.

### 3. Vocational Expert Testimony

#### i. Plaintiff's Ability to be a Dry Cleaner

Plaintiff faults the ALJ for concluding, based on the vocational expert's testimony, that Plaintiff could perform the work of a dry cleaner. (ECF No. 27 at 13-15.) Plaintiff claims that this is error because under the Dictionary of Occupational Titles (DOT), "dry cleaner" requires Level Three Reasoning; the ALJ found that for part of the day, Plaintiff can only perform simple tasks; and the Ninth Circuit has held that there is an apparent conflict between the RFC to perform simple tasks and the demands of Level Three Reasoning. (*Id.* at 15 (citing *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015)).)

Here, however, the record makes clear that the ALJ simply made a typographical error in writing Plaintiff could be a dry cleaner. The vocational expert testified that Plaintiff could be a dry cleaner *helper* and cited DOT No. 362.68**6**-010. AR 150. The ALJ wrote that Plaintiff could be a dry cleaner and cited DOT No. 362.68**2**-010. AR 36. However, there is nothing in the record to suggest that the ALJ meant to deviate from the vocational expert's testimony. Indeed, the DOT Number the ALJ cited (362.682-010) does not exist/is not associated with any occupation. And the number of jobs that exist in the national economy that the ALJ provided for "dry cleaner" (400,000) matches the number of jobs the vocational expert testified exist for "dry cleaner helper" (400,000). *See* AR 36, 150. Accordingly, the ALJ's finding that Plaintiff could be a dry cleaner appears to be nothing more than a harmless scrivener's error. *See Lotze v. Comm'r of Soc. Sec.*, 213 F. App'x 591, 594 (9th Cir. 2006) (typographical error does not require remand); *Henderson*

*v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999) ("[T]he ALJ's reference to an 'Ex. B at 5,' which is not in the record, is nothing more than a typographical error" as the ALJ's "reference recites the medical findings in [the correct] Exhibit B-5.").

Further, "dry cleaner helper," as defined in the DOT, requires Level Two Reasoning. (DOT No. 362.686-010.) Plaintiff does not argue that he could not perform Level Two Reasoning. Accordingly, the ALJ's typographical error does not require reversal or remand.

### ii. Plaintiff's Ability to be a Cleaner

Plaintiff faults the ALJ for finding that Plaintiff could be a cleaner, which requires "frequent" stooping. (*See* DOT 381.687-018.) The ALJ's RFC assessment provided that Plaintiff could only "occasionally" stoop. AR 24. As Plaintiff argues, there is a conflict between Plaintiff's RFC and the stooping requirements for "cleaner." Accordingly, the ALJ erred in finding Plaintiff had the RFC to be a cleaner.

This error is harmless, however, because the ALJ found that Plaintiff could be a dry cleaner helper. At step five, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). Here, the ALJ found that Plaintiff could be a dry cleaner helper, of which there are approximately 400,000 jobs nationwide. AR 36, 150. The Ninth Circuit has not established a "bright-line rule for what constitutes a 'significant number' of jobs." *Beltran*, 700 F.3d at 389. However, the Ninth Circuit has held that the availability of 25,000 national jobs presents a "close call," but constitutes a significant number of jobs. *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014); *see also Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) (125,000 jobs nationally is significant). Accordingly, 400,000 dry cleaner helper jobs is a significant number in the national economy, and the ALJ's error in determining Plaintiff had the RFC to be a cleaner is harmless.

### III. CONCLUSION AND RECOMMENDATION

Accordingly, IT IS THEREFORE RECOMMENDED that Plaintiff's Motion for Reversal and/or Remand (ECF No. 27) be DENIED.

IT IS FURTHER RECOMMENDED that the Commissioner's Cross Motion to Affirm (ECF Nos. 31, 32) be GRANTED.

### IV. NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: August 22, 2019

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE